| | | |
|---|---|---|
| BUYING FOR THE HOME, LLC, | **:** | UNITED STATES DISTRICT COURT |
| | | DISTRICT OF NEW JERSEY |
| Plaintiff, | **:** | Civil Action No. 03-cv-2783 (JAP) |
| -vs- | **:** | |
| HUMBLE ABODE, LLC, et al., | **:** | Return Date:  March 27, 2006 |
| Defendants. | **:** | |

---

## BRIEF IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

---

COLLIER & BASIL, P.C.
P.O. Box 3720
Princeton, NJ 08543-3720
609-924-2213

Attorneys for Plaintiff

# TABLE OF CONTENTS

Table of Authorities ........................................................................ ii

Statement of the Case ..................................................................... 1

I.    Buying's Trademark Claim Is
      Sufficiently Supported    ........................................................ 1

      A.    No Proof of Secondary Meaning Is Necessary
            Because the Mark Is Not Descriptive    ........................... 1

      B.    The Factual Record Is Sufficient to Support a
            Claim of "Infringement by Search Engine"   ................. 4

II.   Proof of Special Damages Is Not Needed
      on Buying's Defamation Claim    ........................................... 7

III.  Humble Is Not Entitled to Summary Judgment
      on Its Claims    ....................................................................... 9

      A.    Summary Judgment Must Be Denied
            in the Absence of Proof of Damages    ........................... 9

      B.    Humble's Claims Are Barred by the
            Comparative Advertising Defense   ................................. 12

      C.    Factual Disputes Bar Summary Judgment
            on Humble's Prima Facie Case    .................................... 22

      D.    The Complaint Is Neither Meritless
            Nor Actionable    ............................................................. 29

IV.   Humble's Remaining Demands for Attorneys' Fees
      Should Be Stricken    ............................................................. 34

Conclusion    ................................................................................. 37

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
  414 F.3d 400 (2d Cir.),
  *cert. denied*, 126 S. Ct. 749 (2005)   ........................................................   4

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000)   ...............................................................   26

*A.J. Canfield Co. v. Honickman*,
  808 F.2d 291 (3d Cir. 1986)   ...............................................................   3

*Abramson v. Japan Air Lines*,
  587 F. Supp. 1099 (D.N.J. 1983),
  *aff'd*, 739 F.2d 130 (3d Cir. 1984),
  *cert. denied*, 470 U.S. 1059)   ............................................................   6

*Ackerman v. Lagano*,
  172 N.J. Super. 468 (L. Div. 1979)   ....................................................   29

*ACCU Personnel, Inc. v. AccuStaff, Inc.*,
  846 F. Supp. 1191 (D. Del. 1994)   .....................................................   10, 11

*Aero-Motive Co. v. U.S. Aeromotive, Inc.*,
  922 F. Supp. 29 (W.D. Mich. 1996)   ..................................................   16

*American Int'l Airways, Inc. v. American Int'l Group, Inc.*,
  816 F. Supp. 1058 (E.D. Pa. 1993)   ...................................................   32-33

*Aromatique, Inc. v. Gold Seal, Inc.*,
  28 F.3d 863 (8th Cir. 1994)   ...............................................................   35

*AutoZone, Inc. v. Tandy Corp.*,
  174 F. Supp. 2d 718 (M.D. Tenn. 2001)   ...........................................   16-17

*Bishop v. Equinox Int'l Corp.*,
    154 F.3d 1220 (10th Cir. 1998)   ............................................................   11

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998)   ............................................................   31

*Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*,
    815 F.2d 500 (8th Cir. 1987)   ...............................................................   14

*Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*,
    824 F.2d 665 (8th Cir. 1987)   ...............................................................   14

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*,
    425 F.3d 211 (3d Cir. 2005)   ..........................................................   14, 15

*CFM Majestic, Inc. v. NHC, Inc.*,
    93 F. Supp. 2d 942 (N.D. Ind. 2000)   ..................................................   34

*Checkpoint Sys., Inc., v. Check Point Software Techs., Inc.*,
    269 F.3d 270 (3d Cir. 2001)   ................................................................   28

*Cortland Line Co. v. Orvis Co.*,
    203 F.3d 1351 (Fed. Cir. 2000)   ...........................................................   13

*CPC Int'l, Inc. v. Skippy Inc.*,
    214 F.3d 456 (4th Cir. 2000)   ...............................................................   21

*Curley v. Klem*,
    298 F.3d 271 (3d Cir. 2002)   ..................................................................   5

*DeVries v. McNeil Consumer Prods. Co.*,
    250 N.J. Super. 159 (App. Div. 1991)   ..................................................   8

*Dijkstra v. Westerink*,
    168 N.J. Super. 128 (App. Div.),
    *certification denied*, 81 N.J. 329 (1979)   ..............................................   8

*Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*,
    952 F.2d 44 (3d Cir. 1991) ..................................................................... 36

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
    930 F.2d 277 (3d Cir. 1991) ............................................................... 2, 3

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
    432 F.3d 463 (3d Cir. 2005) ............................................................ 25-26

*G.D. Searle & Co. v. Hudson Pharm. Corp.*,
    715 F.2d 837 (3d Cir. 1983) ............................................................ 13, 16

*General Healthcare Ltd. v. Qashat*,
    364 F.3d 332 (1st Cir. 2004) .................................................................. 23

*Gnapinsky v. Goldyn*,
    23 N.J. 243 (1957) .................................................................................. 8

*Hassoun v. Cimmino*,
    126 F. Supp. 2d 353 (D.N.J. 2000) ....................................................... 31

*Hill v. Algor*,
    85 F. Supp. 2d 391 (D.N.J. 2000) ......................................................... 30

*Honeywell Consumer Prods., Inc. v. Windmere Corp.*,
    993 F. Supp. 22 (D. Mass. 1998) .......................................................... 31

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) .............................................................................. 12

*Hypertherm, Inc. v. Precision Prods., Inc.*,
    832 F.2d 697 (1st Cir. 1987) .................................................................. 14

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir. 1983) .................................................................. 25

*interState Net Bank v. Netb@nk, Inc.*,
348 F. Supp. 2d 340 (D.N.J. 2004) ........................................... 16, 27, 28

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005) ..................................................... 2

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
287 F.3d 866 (9th Cir. 2002) ................................................... 20

*Jobes v. Evangelista*,
369 N.J. Super. 384 (App. Div.),
*certification denied*, 180 N.J. 457 (2004) ........................................... 8

*Justofin v. Metropolitan Life Ins. Co.*,
372 F.3d 517 (3d Cir. 2004) ................................................... 12

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) ...................................... 12, 13, 15, 21, 24

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
408 F.3d 596 (9th Cir. 2005) ................................................. 13

*Lang v. Retirement Living Publ'g Co.*,
949 F.2d 576 (2d Cir. 1991) ................................................. 16

*Loegering Mfg., Inc. v. Grouser Prods., Inc.*,
330 F. Supp. 2d 1057 (D.N.D. 2004) ..................................... 23

*Lutheran Ass'n of Missionaries & Pilots, Inc. v.
Lutheran Ass'n of Missionaries & Pilots, Inc.*,
2005 WL 629605 (D. Minn. Mar. 15, 2005) ........................................ 10

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) ........................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................... 33

*Mayflower Indus. v. Thor Corp.*,
    15 N.J. Super. 139 (Ch. Div. 1951),
    *aff'd*, 9 N.J. 605 (1952) ........................................................................... 30

*Mayflower Transit, LLC v. Prince*,
    314 F. Supp. 2d 362 (D.N.J. 2004) ................................................... 7, 8

*McDonald's Corp. v. Burger King Corp.*,
    107 F. Supp. 2d 787 (E.D. Mich. 2000) ................................................. 23

*McKnight v. General Motors Corp.*,
    511 U.S. 659 (1994) ........................................................................... 32, 35

*Microsoft Corp. v. CMOS Techs., Inc.*,
    872 F. Supp. 1329 (D.N.J. 1994) ........................................................... 11

*Moseley v. V Secret Catalogue, Inc.*,
    537 U.S. 418 (2003) ............................................................................... 14

*Pebble Beach Co. v. Tour 18 I Ltd.*,
    155 F.3d 526 (5th Cir. 1998) ................................................................. 14

*Penwag Prop. Co. v. Landau*,
    76 N.J. 595 (1978) ................................................................................. 30

*Pharmacia Corp. v. Alcon Labs., Inc.*,
    201 F. Supp. 2d 335 (D.N.J. 2002) ....................................................... 28

*Philbin v. Trans Union Corp.*,
    101 F.3d 957 (3d Cir. 1996) ..................................................................... 6

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*,
    390 F.3d 158 (2d Cir. 2004) ............................................................. 4, 24

*Professional Real Est. Investors, Inc. v.*
*Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................. 31

vi

*Quick Techs., Inc. v. Sage Group PLC*,
    313 F.3d 338 (5th Cir. 2002),
    *cert. denied*, 540 U.S. 814 (2003) ........................................................... 11

*R&B, Inc. v. Needa Parts Mfg., Inc.*,
    50 Fed. Appx. 519 (3d Cir. 2002) ..................................... 22, 23, 27

*Ricciardi v. Weber*,
    350 N.J. Super. 453 (App. Div. 2002),
    *certification denied*, 175 N.J. 433 (2003) ................................................ 7

*Ruberton v. Gamage*,
    280 N.J. Super. 125 (App. Div.),
    *certification denied*, 142 N.J. 451 (1995) ........................................... 30

*Salek v. Passaic Collegiate School*,
    255 N.J. Super. 355 (App. Div. 1992) ................................................ 30

*SecuraComm Consulting Inc. v. Securacomm Inc.*,
    166 F.3d 182 (3d Cir. 1999) ................................................................. 11

*Securacomm Consulting, Inc. v. Securacomm Inc.*,
    224 F.3d 273 (3d Cir. 2000) ..................................................... 32, 35, 36

*Smith v. Ames Dep't Stores, Inc.*,
    988 F. Supp. 827 (D.N.J. 1997),
    *aff'd*, 172 F.3d 860 (3d Cir. 1998) ......................................................... 13

*Smith v. Chanel, Inc.*,
    402 F.2d 562 (9th Cir. 1968) ................................................................. 14

*Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship*,
    380 F.3d 126 (2d Cir. 2004) ................................................................. 19

*Solutech, Inc. v. Solutech Consulting Servs., Inc.*,
    153 F. Supp. 2d 1082 (E.D. Mo. 2000) ................................................ 23

*Southco, Inc. v. Kanebridge Corp.*,
  258 F.3d 148 (3d Cir. 2001)   ......................................................   23

*Spartan Food Sys., Inc. v. HFS Corp.*,
  813 F.2d 1279 (4th Cir. 1987)   ...................................................   23

*SSP Agric. Equip., Inc. v. Orchard-Rite Ltd.*,
  592 F.2d 1096 (9th Cir. 1979)   ...................................................   14

*Stillman v. Edmund Scientific Co.*,
  522 F.2d 798 (4th Cir. 1975)   .....................................................   34

*Sykes Lab., Inc. v. Kalvin*,
  610 F. Supp. 849 (C.D. Cal. 1985)   ...........................................   14

*TakeCare Corp. v. TakeCare of Okla., Inc.*,
  889 F.2d 955 (10th Cir. 1989)   ...................................................   34

*Teaching Co. v. Unapix Entertainment, Inc.*,
  87 F. Supp. 2d 567 (E.D. Va. 2000)   .........................................   10

*Trade Media Holdings Ltd. v. Huang & Assocs.*,
  123 F. Supp. 2d 233 (D.N.J. 2000)   ...........................................   3

*Transclean Corp. v. Bridgewood Servs., Inc.*,
  77 F. Supp. 2d 1045 (D. Minn. 1999),
  *aff'd*, 290 F.3d 1364 (Fed. Cir. 2002)   .....................................   23

*U-Haul Int'l, Inc. v. WhenU.com, Inc.*,
  279 F. Supp. 2d 723 (E.D. Va. 2003)   .......................................   14

*Vendo Co. v. Lektro-Vend Corp.*,
  433 U.S. 623 (1977)   ..................................................................   31

*Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*,
  50 F.3d 189 (3d Cir. 1995)   .......................................................   28

*Vitek Sys., Inc. v. Abbott Labs.*,
    675 F.2d 190 (8th Cir. 1982)   .................................................................   2

*Wells Fargo & Co. v. WhenU.com, Inc.*,
    293 F. Supp. 2d 734 (E.D. Mich. 2003)   ..............................................   4

*Westhoff v. Kerr S.S. Co.*,
    219 N.J. Super. 316 (App. Div.),
    *certification denied*, 109 N.J. 503 (1987)   ...........................................   30

*Williams v. Curtiss-Wright Corp.*,
    691 F.2d 168 (3d Cir. 1982)   ..................................................................   19

*Worthington v. Anderson*,
    386 F.3d 1314 (10th Cir. 2004)   ...........................................................   19

## Statutes & Rules

15 U.S.C. § 1065   .......................................................................................   22

15 U.S.C. § 1117   ...........................................................................   10-11, 34-36

15 U.S.C. § 1125   .......................................................................................   14

N.J.S.A. 12A:1-201   ...................................................................................   21

## Miscellaneous

1 J. McCarthy,
    *Trademarks & Unfair Competition* (2d ed. 1984)   ................................   2

K. Saunders,
    *Confusion Is the Key: A Trademark Law Analysis*
    *of Keyword Banner Advertising*,
    71 Fordham L. Rev. 543 (Nov. 2002)   ...................................................   4-5

## STATEMENT OF THE CASE

Plaintiff Buying for the Home, Inc. and defendant Humble Abode, LLC are competitors in the business of selling furniture via the internet.  Each is accusing the other of improprieties in the methods of marketing online.  In particular, each contends that its trademarks are being used improperly on the other's websites.  Humble has moved for summary judgment with respect to the claims of both parties.  As shown below, Humble's motion should be denied.

## I.   BUYING'S TRADEMARK CLAIM IS SUFFICIENTLY SUPPORTED.

Humble launches a two-pronged attack on Buying's claim of trademark infringement: (1) Buying lacks a valid trademark; and (2) the facts will not support Buying's claim of "infringement by search engine."  Neither of these arguments will withstand scrutiny.

## A.   No Proof of Secondary Meaning Is Necessary Because the Mark Is Not Descriptive.

Humble argues that TOTAL BEDROOM is descriptive and therefore is not entitled to trademark protection without proof of secondary meaning.  However, Humble fails to demonstrate that TOTAL BEDROOM is descriptive as applied to furniture products; not even one example of such a use is cited.  There is a good reason for this — TOTAL BEDROOM is simply not descriptive of products such as

1

beds.  "A mark is considered descriptive if it describes 'the intended purpose, function or use of the goods, or a desirable characteristic of the goods, or of the end effect upon the user.'" *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 n.18 (3d Cir. 1991), *quoting* 1 J. McCarthy, *Trademarks & Unfair Competition* § 11:5 (2d ed. 1984).  While terms such as "big" or "brown" or "long" or "hard" are descriptive as applied to beds, "TOTAL BEDROOM beds" is not — it tells us nothing about the purpose of the beds, or their function, use, characteristics, or effect upon the user.

The Patent and Trademark Office does not consider the term "total," when used in combination with another term, to be merely descriptive as applied to a product or service.  There are over one thousand examples of trademark registrations using the term "total" — such as TOTAL FITNESS creams, TOTAL EFFECT vitamins, TOTAL WELLNESS health club services, and TOTAL HOME SERVICES lawn care.[1]  [Ba6-13]  More to the point, and dispositive of this issue, is the indisputable fact that TOTAL BEDROOM was actually registered in 1994 as a mark for furniture

---

[1]Registrations are public records subject to judicial notice. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192 n.4 (8th Cir. 1982).

2

store services.[2]  [Ba14-16]

Because TOTAL BEDROOM is not a descriptive mark, it falls into one of the other categories recognized by the courts — arbitrary, fanciful, or suggestive.[3]  As such, it is deemed to be inherently distinctive "and it automatically qualifies for trademark protection at least in those geographic and product areas in which the senior user applies it to its goods."  *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296-97 (3d Cir. 1986).  This means that it is not necessary for the owner of the mark to prove secondary meaning; as Humble concedes [Hb12, 21-22], the burden of proving secondary meaning arises only if the mark is descriptive.  *See id*.; *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d at 292 & n.18; *Trade Media Holdings Ltd. v. Huang & Assocs.*, 123 F. Supp. 2d 233, 237 (D.N.J. 2000).

Accordingly, Buying has no burden of proving secondary meaning.  Therefore, the absence of proof of secondary meaning is not a valid basis for Humble's motion.

---

[2]The 1994 registration involved a third party, and the mark was subsequently cancelled for failure to file a certification of continued use.  [Ba14]

[3]The TOTAL BEDROOM mark is a suggestive mark within the definitions set forth on page 21 of Humble's initial Brief.  But even if there were any doubt on this point, Humble is not entitled to summary judgment because "[t]he characterization of a mark is a factual issue for the jury."  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d at 292 n.18.

3

**B.    The Factual Record Is Sufficient to Support a Claim of "Infringement by Search Engine."**

Before addressing the facts of this theory, it is important for the Court to understand that the theory itself is of questionable validity.  Humble itself relies on an identical theory [Hb31-34] and candidly admits that "the law is still unsettled on this question." [Hb15, 33]  Although Humble cites two cases from other districts in which the theory was accepted at the pleading stage, there seems to be a recent trend toward rejection of trademark infringement claims in the context of internet advertising.  *See 1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir.), *cert. denied*, 126 S. Ct. 749 (2005); *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158 (2d Cir. 2004); *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003).  At least one scholar is of the opinion that *all* internet uses of trademarks should be considered fair use and not subject to claims of infringement:

> Keyword banner advertising is a form of targeted online marketing practice whereby a banner ad is displayed on a search engine results page.  The banner ad is triggered by the keyword used in the search.  Many search engines sell trademarks as keywords as well, allowing competitors to purchase them as keywords for the purpose of displaying their own advertising.  Some have argued that this practice should lead to liability for trademark infringement or dilution.  Given the realities of online marketing and the underlying policies of trademark law, this is unlikely.  Rather, this practice should be regarded as trademark fair use and treated as a form of lawful comparative advertising.

K. Saunders, *Confusion Is the Key: A Trademark Law Analysis of Keyword Banner*

4

*Advertising*, 71 Fordham L. Rev. 543 (Nov. 2002).

Thus, before wasting time on reviewing the facts, the Court should consider whether to recognize the legal theory as valid in this District.  If the Court rejects the theory, both Buying's claim and Humble's identical claim must be dismissed.  If the Court accepts the theory, the facts must be examined.  Humble's only argument on the facts is as follows:

> [T]here is simply no proof that [Humble] ever actually purchased [Buying]'s essentially unknown, unprotectible business name as a search term.  On the other hand, there is proof — the letter from Google set forth above — that directly contradicts that assertion.  [Hb15-16]

As to the first point, Humble overlooks Buying's "screen shot" evidence, which documents that a Google search for the term "total bedroom" resulted in not only a link to its own web site but also a sponsored link, leading to Humble Abode's web site.  The sponsored link did not appear when searching for either the term "total" or the term "bedroom."  The sponsored link appeared only when the search term was "total bedroom."  [Ross Deposition 42-47 (Coleman Certification, Exhibit D)]  The fair inference to be drawn from these facts is that Humble purchased a sponsored link to be triggered by the search term "total bedroom."  On a motion for summary judgment, inferences must be drawn in favor of the party opposing the motion — in this case, Buying.  *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

5

Given the existence of evidence supporting a prima facie case under Buying's legal theory (as that theory is explained by Humble), it does not matter if Humble has directly contradictory evidence, because the existence of a factual dispute precludes the granting of Humble's motion.  Nevertheless, it is worth examining the "evidence" that Humble claims to be contradictory.

Humble attempts to defeat Buying's claim by pointing to an e-mail it received from "Frankie and The Google AdWords Team." [Wickersham Certification, Exhibit 1] However, because the e-mail is unsworn and is offered for the truth of its contents, the statements in the e-mail are inadmissible hearsay and therefore cannot be considered on a motion for summary judgment even if the e-mail itself is properly authenticated.  *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996) (unsworn statements from unidentified corporate employee must be disregarded on a summary judgment motion); *Abramson v. Japan Air Lines*, 587 F. Supp. 1099, 1104 (D.N.J. 1983) (statements in letter cannot be considered because they are not under oath or certified in lieu of oath), *aff'd*, 739 F.2d 130 (3d Cir. 1984), *cert. denied*, 470 U.S. 1059).  Consequently, the e-mail from "Frankie" must be disregarded on this motion — which leaves Buying's prima facie case completely unrebutted.  As a result, Humble's motion seeking dismissal of Buying's trademark

6

infringement claim must be denied.[4]

## II.    PROOF OF SPECIAL DAMAGES IS NOT NEEDED ON BUYING'S DEFAMATION CLAIM.

Relying on *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378-79 (D.N.J. 2004), Humble argues that pleading and proof of special damages is always required on a claim for trade libel.  While this may be true, Humble conveniently overlooks the distinction drawn in *Mayflower Transit* between defamation and trade libel.  Trade libel requires disparagement of products, whereas ordinary principles of defamation govern disparagement of the person or entity that sells the products.  *Id*. at 377.  In this case, the statements alleged to be defamatory relate to the seller of the products and not to the products themselves.  Consequently, this case is governed by ordinary principles of defamation.

As *Mayflower Transit* recognizes, statements imputing "occupational incompetence or misconduct" constitute libel per se.  *Id.  See Ricciardi v. Weber*, 350 N.J. Super. 453,  477 (App. Div. 2002) ("To fall within this category [slander per se], the statement must be of such a character as to disparage the plaintiff in pursuit of his business, trade, profession, or office, or tend to harm him in it"), *certification denied*,

---

[4]If Buying's claim is viable under federal law, it is viable under New Jersey law as well, for the reasons expressed on pages 16 and 29 of Humble's Brief. Accordingly, Humble's motion to dismiss Buying's unfair competition claim must be denied.

175 N.J. 433 (2003).   In the present case, the statements alleged to be defamatory accuse Buying of unlawful and unethical business conduct (stealing customers and violating trademark law) [Ba18-39, 55-57, 65-67, 87-88], and thus clearly fall within this category.[5]   *See DeVries v. McNeil Consumer Prods. Co.*, 250 N.J. Super. 159 (App. Div. 1991).   Consequently, no proof of special damages is necessary.   Indeed, no proof of *any* actual damages is necessary — "damages are presumed to exist and need not be shown."   *Mayflower Transit*, 314 F. Supp. 2d at 377.   *Accord*, *Jobes v. Evangelista*, 369 N.J. Super. 384, 397 (App. Div.), *certification denied*, 180 N.J. 457 (2004).   Thus, merely by introducing Humble's deposition testimony admitting publication of the statements in question, Buying has established a prima facie case of defamation.   Therefore, Humble's motion seeking dismissal of this claim must be denied.

---

[5]Buying's name was not mentioned in at least one of the defamatory communications.  However, "the actual naming of plaintiff is not a necessary element in an action for libel.  It is enough that there is such reference to him that those who hear or read the libel reasonably understand the plaintiff to be the person intended." *Dijkstra v. Westerink*, 168 N.J. Super. 128, 133 (App. Div.), *certification denied*, 81 N.J. 329 (1979).  Humble's e-mail gave specific information — "Recently, a competitor of ours started bidding on our company name through AdWords" [Ba19] — which was sufficient to allow Google to identify Buying simply by checking its Adwords records of recent bidding.  This warrants an inference that Google understood that the e-mail referred to Buying. *Gnapinsky v. Goldyn*, 23 N.J. 243, 253 (1957) ("The identification of the person defamed may be so evident . . . such as to warrant an inference that the published statement was understood by at least some third person to bear upon plaintiff").

8

## III.   HUMBLE IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS.

As shown below, Humble's federal and state claims suffer from factual and/or legal defects, and/or are subject to valid defenses.  Accordingly, Humble's motion for summary judgment on its claims must be denied.

### A.   Summary Judgment Must Be Denied in the Absence of Proof of Damages.

Humble concedes that its entire case collapses if there have been no damages. [Hb38]  Thus, before wasting time on the liability aspects of Humble's claims, it makes sense to start with damages.  If there are none, the current motion must be denied, as Humble itself admits.

Incredibly, Humble suggests that "[a] proper determination of damages may require additional discovery and a hearing." [Hb39] This suggestion is without merit because discovery was closed last year.  Humble has been clamoring ever since then that it should be allowed to file a summary judgment motion, so Humble cannot be heard to argue that it needs additional discovery to satisfy its burden of proving damages on this long-awaited motion.  This means that Humble is limited to the proofs it has already filed, which do not include any expert testimony.  As a matter of law, these proofs are fatally deficient and will not support an award of damages of any type.

9

As Humble admits, it "has not commissioned any customer surveys and has no customer testimony to submit." [Hb23]  In other words, the record is devoid of any proof of actual consumer confusion.  Without such proof, Humble cannot recover actual damages. *Lutheran Ass'n of Missionaries & Pilots, Inc. v. Lutheran Ass'n of Missionaries & Pilots, Inc.*, 2005 WL 629605, at *5 (D. Minn. Mar. 15, 2005) ("Under the Lanham Act, an award of actual damages depends on the existence of actual confusion"); *Teaching Co. v. Unapix Entertainment, Inc.*, 87 F. Supp. 2d 567, 588 (E.D. Va. 2000) ("to recover monetary damages, a plaintiff must prove actual confusion"); *ACCU Personnel, Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1215 (D. Del. 1994) ("In order to be awarded actual damages as a result of trademark infringement, plaintiff must show at least some instances of actual consumer confusion").

Instead of proving actual damages based on actual confusion, Humble relies solely on the raw data attached to the Isley Declaration, which purports to reflect sales by Buying during an unknown one-year period.  According to Humble, this unexplained raw data gives Humble the right to damages of $122,317, which represents the gross amount supposedly received by Buying with respect to products bearing names claimed by Humble.  Although Humble does not explain its theory, it appears to be an attempt to demand an award of Buying's profits under 15 U.S.C. §

10

1117(a), which provides: "In assessing profits the plaintiff shall be required to prove defendant's sales only . . . ."

In addition to serious doubt as to whether unexplained raw data constitutes adequate proof of sales, it is important to note that "an award of the defendant's profits is not automatic." *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002), *cert. denied*, 540 U.S. 814 (2003); *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1337 (D.N.J. 1994). Before profits can be awarded, first there must be some showing of actual consumer confusion. *ACCU Personnel, Inc. v. AccuStaff, Inc.*, 846 F. Supp. at 1215 ("In order to be awarded actual damages as a result of trademark infringement, plaintiff must show at least some instances of actual consumer confusion. The same principle governs the accounting of profits"); *see Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir. 1998) ("we recognize that a finding of actual damage remains an important factor in determining whether an award of profits is appropriate"). Because no such showing was made or even attempted on this motion, Humble is not entitled to an award of profits.

Furthermore, profits cannot be awarded without proof of willful infringement, which is defined as "an intent to infringe or a deliberate disregard of a mark holder's rights." *SecuraComm Consulting Inc. v. Securacomm Inc.*, 166 F.3d 182, 187 (3d Cir. 1999); *Bishop*, 154 F.3d at 1223 ("More importantly, we are mindful that an

11

award of profits requires a showing that defendant's actions were willful or in bad faith").  No such showing has been made by Humble; on the contrary, the record shows laudable efforts by Buying to avoid any confusion, as discussed below.  At the very least, there is a factual dispute on this issue, which precludes a finding of willful infringement — issues of intent, motive, or state of mind are inappropriate for resolution on a summary judgment motion.  *Hunt v. Cromartie*, 526 U.S. 541, 552-53 (1999); *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 523-24 (3d Cir. 2004).

Therefore, Humble is not entitled to an award of damages on this motion.  As a result, Humble's motion for summary judgment must be denied.

## B.    Humble's Claims Are Barred by the Comparative Advertising Defense.

Another good reason to postpone examination of the liability aspects of Humble's trademark infringement claim is that Buying has raised the affirmative defense of fair use in the form of comparative advertising.  This defense would defeat Humble's claim even if Humble can prove its case.  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004) ("If a plaintiff succeeds in making out a prima facie case of trademark infringement, including the element of likelihood of consumer confusion, the defendant may . . . raise an affirmative defense to bar relief even if the prima facie case is sound").  Therefore, if the evidence is sufficient to allow the jury to find that Buying's comparative advertising made fair

12

use of the marks, Humble's motion must be denied whether or not it can establish trademark infringement.[6]  Consequently, it makes sense to address the affirmative defense first, because it may moot examination of Humble's prima facie case.

The Counterclaim alleges that Buying has been using Humble's trademarks as part of a price comparison on Buying's websites.  However, even assuming that Humble has any trademarks,[7] price comparisons are protected commercial speech under the First Amendment and are not actionable as trademark infringement. "The use of a competitor's trademark for purposes of comparative advertising is not trademark infringement 'so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product.'"  *G.D. Searle & Co. v. Hudson Pharm.*

---

[6]Buying's proofs on the comparative advertising defense are undisputed and are so compelling that they warrant summary judgment in favor of Buying.  However, Buying need not dispel all doubt in order to defeat the current motion; only a showing of facts sufficient to support the affirmative defense is necessary to mandate its submission to the jury.  Also, because fair use is a fact-sensitive defense, *see KP Permanent*, 543 U.S. at 124 n.6, summary judgment is often inappropriate on this issue. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005); *Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1361 (Fed. Cir. 2000); *Smith v. Ames Dep't Stores, Inc.*, 988 F. Supp. 827, 837 (D.N.J. 1997), *aff'd*, 172 F.3d 860 (3d Cir. 1998).

[7]Humble argues that Buying's trademark disclaimers constitute an admission that trademarks exist, but cites no authority for this proposition. This is not surprising, because trademark rights are defined by federal and state law; they cannot be conferred by the consent of the parties.

*Corp.*, 715 F.2d 837, 841 (3d Cir. 1983), *quoting SSP Agric. Equip., Inc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103 (9th Cir. 1979), *quoting Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968).[8]

The comparative advertising defense is a subset of the affirmative defense of fair use or nominative fair use.  *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S.

---

[8]The cases in accord are legion.  *E.g.*, *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 545 (5th Cir. 1998) ("one can use another's mark truthfully to identify another's goods or services in order to . . . compare its product to the markholder's product"); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 668 (8th Cir. 1987) ("A manufacturer does not commit unfair competition merely because it refers to another's product by name in order to win over customers interested in a lower cost copy of that product if the reference is truthful and does not likely confuse consumers into believing that the copy is from the same source as the original"); *Hypertherm, Inc. v. Precision Prods., Inc.*, 832 F.2d 697, 701 (1st Cir. 1987) (reversing injunction because it "left [defendant] without any efficacious way to tell the public that its goods, when clearly denominated as such, were (it thought) comparable to [plaintiff]'s own [products]" and "the decree should have permitted [defendant] to use [plaintiff's] name and the like in a purely descriptive sense for the limited purpose of comparative marketing"); *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 504 (8th Cir. 1987) ("an imitator is entitled to truthfully inform the public that it believes that it has produced a product equivalent to the original and that the public may benefit through lower prices by buying the imitation"); *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 728 (E.D. Va. 2003) ("comparative advertising does not violate trademark law, even when the advertising makes use of a competitor's trademark"); *Sykes Lab., Inc. v. Kalvin*, 610 F. Supp. 849, 855 (C.D. Cal. 1985) ("defendants commit no act of unfair competition merely because they refer to plaintiff's [product] by its name in order to win over customers interested in a lower cost product").  *See also Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005); 15 U.S.C. § 1125(c)(4)(A) ("The following shall not be actionable under this section: . . .  Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark").

418, 431 (2003) (recognizing that comparative advertising falls within the "fair use" doctrine); *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 214 (3d Cir. 2005). In cases where this defense is raised, the burden of proving likelihood of confusion remains squarely on the party claiming infringement. Only after the claimant proves the elements of infringement does the burden shift to the other party to demonstrate that its use of the mark was fair. *KP Permanent*, 543 U.S. at 119-20; *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d at 221-22. Where fair use is shown, there can be no liability for infringement — ***even if some degree of consumer confusion exists!*** *See KP Permanent*, 543 U.S. at 120 ("If a plaintiff succeeds in making out a prima facie case of trademark infringement, including the element of likelihood of consumer confusion, the defendant may . . . raise an affirmative defense to bar relief even if the prima facie case is sound"); *id.* at 121 ("some possibility of consumer confusion must be compatible with fair use"); *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d at 222 ("the co-existence of fair use with some likelihood of confusion" is "specifically contemplated").

This means that Humble's harping on the mantra of likelihood of confusion does not translate into summary judgment for Humble. As noted earlier, if the record would allow the jury to find that Buying's comparative advertising made fair use of the marks, Humble's motion must be denied, no matter how strong its prima facie

15

case may be.

The essence of the comparative advertising defense is truthfulness in the use of a competitor's mark.  As the Third Circuit puts it, "whether one is entitled to refer to a competitor's trademark depends not on where the reference appears but on whether the reference is truthful."  *G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d at 843.  The undisputed record shows that Buying went out of its way to ensure truthfulness and to avoid confusion by notifying the public that the alleged trademarks belong to Humble.

Indeed, far from intending to deceive anyone, Buying objectively demonstrated its good faith by seeking the advice of highly competent counsel before launching its website.  In fact, attorneys from the Fox Rothschild firm reviewed all of the proposed text before it appeared on the website, and returned the text to Buying with appropriate disclaimers and other modifications drafted by counsel.  Buying relied on this advice and followed it scrupulously, incorporating all of it into the website. [Ross Deposition 54-56 (Coleman Certification, Exhibit D)]  Such reliance on the advice of counsel negates any intent to mislead consumers.  *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991); *interState Net Bank v. Netb@nk, Inc.*, 348 F. Supp. 2d 340, 353 (D.N.J. 2004); *Aero-Motive Co. v. U.S. Aeromotive, Inc.*, 922 F. Supp. 29, 44-45 (W.D. Mich. 1996); *AutoZone, Inc. v. Tandy Corp.*, 174

F. Supp. 2d 718, 732 (M.D. Tenn. 2001).

Moreover, the text approved and/or drafted by Fox Rothschild is truthful.  For example, at the very beginning of Buying's "Price Comparison" page, one finds:

> Total Bedroom is a strong believer in offering a quality product at an amazing price.  Our visitors don't need to wait for coupons or promotions.  **Total Bedroom guarantees the lowest prices day in and day out.**
>
> In addition to offering the lowest prices anywhere, we have begun to educate our visitors as to how retailers like Humble Abode sell the same product for much more under a different name.  After doing a thorough evaluation of every coupon code and sale ever offered at Humbleabode.com it is clear that the Total Bedroom price was always significantly cheaper.  For comparison we have listed the Humble Abode product names, to learn more or order, **click the product picture below.**
>
> Humble   Abode   and   product   names   are   trademarks   of HumbleAbode.com, LLC.  All other trademarks are the property of the respective trademark owners.  [Bold in original.]

Beneath this disclaimer appear photographs of various products.  Under each product is the product name, the legend "Compare & Save," a "Regular price" line, and a "Sale price" line.

By clicking on a photograph, the visitor arrives at a page where the same photograph appears again, only larger and more enlargeable.  To the right of the photograph appears the product name, followed by the legend "Compare & Save." Under the Humble product name one finds "Manufacturer name for this bed:" and

then the name that appears in the manufacturer's catalogue.  After product details are explained, a final paragraph states:

> Total Bedroom has found this same bed renamed.  In an effort to clarify the market for furniture shoppers, we decided to include a comparison to humbleabode.com who sells this as the [Humble product name]. Some of our customers call this an "instant coupon" or "instant rebate", others call it a huge savings.  We are just happy to sell quality discounted furniture to an educated consumer.

The photographs that appear on Buying's website are the same photographs that appear on Humble's website.  Both parties obtained the photographs from the same source — a compact disk containing the catalogue of the Fashion Bed Group of Leggett & Platt, the manufacturer of the products depicted in the photographs. [Ross Deposition 60 (Coleman Certification, Exhibit D); Ba60-64, 84-86]  The catalogue lists the products under the names given to them by the manufacturer.

When Humble uses the manufacturer's photographs on its website, it gives the products different names — those that are claimed to be trademarks in this case. What Buying has done is to use the same photographs and to list both the Humble name and the manufacturer's name.  Buying advises the potential buyers that, if they want to purchase the product shown in the photograph, Buying can sell it to them cheaper than Humble does.  The product is being sold via the photograph, not via the name of the product.  Indeed, the whole message of Buying's approach is that the

name of the product does not matter — only the price counts.

Humble argues that Buying is not selling the same product as the one that Humble sells. As a factual matter, there is no basis for this assertion, because Humble admitted during depositions that it does not know what products Buying sells. [Ba43-44, 58-59, 71, 77] Buying, on the other hand, sells exactly what is depicted in the photographs — if a customer wants the product shown in a particular photograph, Buying simply calls the manufacturer and orders the product that corresponds to that photograph in the manufacturer's catalogue.

At depositions, Humble testified that sometimes it does this, but sometimes it does not. On the occasions when it does not, Humble claims that it upgrades what is shown in the photograph, such that it actually sells "a completely different product." [Ba46-55, 59, 69-78, 81-83] This is a shocking admission of false advertising by Humble.[9] When a customer points to a photograph and says "I want this," the

---

[9]Humble is engaged in the deceptive practice known as "reverse palming off," which is removal of the original brand name of a product and substitution of a different brand name. *Williams v. Curtiss-Wright Corp.*, 691 F.2d 168, 172 (3d Cir. 1982); *Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship*, 380 F.3d 126, 131 (2d Cir. 2004). The re-naming of the product causes harm to the brand owner by depriving it of brand recognition, and causes harm to the public by causing confusion as to the source of apparently identical goods. Here, Humble not only re-named the products depicted in the photographs from the manufacturer, but also compounded the confusion by substituting different products than those depicted by the manufacturer. Under these circumstances, Humble's claims should be barred by the equitable doctrine of unclean hands. *See Worthington v. Anderson*, 386 F.3d 1314

customer gets something different than what corresponds to that photograph in the manufacturer's catalogue. The customer may get a better product, but it is not the product that appeared in the photograph taken by the manufacturer. This causes confusion in the marketplace.

Thus, there is nothing wrongful about Buying's stating that it is selling the "same product" as the one depicted on Humble's website. In fact, Buying's statement is absolutely true. Indeed, as between Humble and Buying, it turns out that Buying is the *only* company selling the products as they are depicted on Humble's website.

Likewise, Buying correctly identified the beds depicted in the photographs, correlating them with the names given to them by the manufacturer that took the photographs — thereby diminishing the likelihood of confusion that Humble caused. Humble may not like the fact that Buying exposed Humble's scheme of re-naming the photographs, but Buying's disclosure was truthful and therefore constitutes privileged and protected speech. As such, it is immune from liability under the Lanham Act.

The gist of Humble's claim is that Buying should have used a different color than gray for one of its disclaimers,[10] and should have repeated the same disclaimer

_____

(10th Cir. 2004); *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002).

[10]The disclaimer appeared in gray and in a separate new paragraph in order to distinguish it from the black text that preceded it and thus to call greater attention to

each time a Humble product appeared, instead of at the beginning of the price comparison page and at the bottom of each separate product page.  In other words, Humble's theory is that Buying should have been more fastidious than it was with its trademark disclaimers.

But even if the Court were to accept this questionable legal theory, the adequacy of the disclaimer is an issue of fact to be decided by the jury.  And even if a jury were to find the disclaimer inadequate, the obvious remedy would simply be to order a better disclaimer.[11]  *See KP Permanent*, 543 U.S. at 119 ("Lasting is certainly correct that some unfair competition cases would stress that use of a term by another in conducting its trade went too far in sowing confusion, and would either enjoin the use or order the defendant to include a disclaimer").

In short, the record clearly establishes a valid and indeed compelling affirmative defense of fair use in the form of truthful comparative advertising. Consequently, Humble's motion for summary judgment must be denied, whether or

_____

it.  The sales chapter of the New Jersey Uniform Commercial Code recognizes such use of contrasting colors as a classic method of making text more conspicuous. N.J.S.A. 12A:1-201(10).

[11]Any injunction that restricts speech must be narrowly tailored so that it will "burden no more speech than necessary to serve a significant government interest." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  This standard is applicable to injunctions in trademark cases.  *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 461 (4th Cir. 2000).

not Humble has established a prima facie case of trademark infringement.

## C.   Factual Disputes Bar Summary Judgment on Humble's Prima Facie Case.

A prima facie case of trademark infringement "requires a showing that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the mark is likely to cause confusion concerning the origin of the goods and services." *R&B, Inc. v. Needa Parts Mfg., Inc.*, 50 Fed. Appx. 519, 524 (3d Cir. 2002). Although it is unnecessary to address Humble's prima facie case if the Court agrees with either Point III(A) or Point III(B) of this Brief, examination of Humble's claim shows that it does not qualify for summary judgment.

In the first place, contrary to Humble's insistence, there are serious questions as to whether the trademarks claimed by Humble are valid and legally protectable. While Humble boasts that the HUMBLE ABODE mark is registered, it conveniently neglects to inform the Court that it was registered as a service mark and not a trademark. The registration — which is dated April 20, 2004 and thus is still contestable, *see* 15 U.S.C. § 1065 — is for use of the mark in connection with "computerized on-line retail services in the field of furniture and home furnishings." [Ba4] Humble's attempt to register HUMBLE ABODE as a trademark with respect to goods was rejected by the Patent and Trademark Office. [Ba1-3] The present case involves the sale of goods, not services, and therefore Humble's registered service

22

mark is not directly relevant.

However, the reason for the P&TO's rejection of the proposed trademark for goods — Humble's failure to submit specimens showing use of the mark on the products — *is* directly relevant.  In order to establish trademark rights for goods such as beds, mere advertising of a product name is not enough.[12]  The mark must be attached to the goods or to their packaging.  *General Healthcare Ltd. v. Qashat*, 364 F.3d 332, 334-35 (1st Cir. 2004); *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1283 (4th Cir. 1987); *Loegering Mfg., Inc. v. Grouser Prods., Inc.*, 330 F. Supp. 2d 1057, 1070 (D.N.D. 2004); *Solutech, Inc. v. Solutech Consulting Servs., Inc.*, 153 F. Supp. 2d 1082, 1089 (E.D. Mo. 2000); *McDonald's Corp. v. Burger King Corp.*, 107 F. Supp. 2d 787, 790 (E.D. Mich. 2000); *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1093 (D. Minn. 1999), *aff'd*, 290 F.3d 1364 (Fed. Cir. 2002).  Humble admits that, when it orders products from the manufacturer, the products are "drop shipped" directly from the manufacturer to the retail customer

---

[12]Humble argues that "unique catalog designations such as model numbers and catalog designations will also be protected as trademarks when they are recognized as such by consumers or the trade."  [Hb27]  In support of this proposition, Humble cites cases from other circuits.  In the Third Circuit, however, the proposition is of questionable validity.  *See Southco, Inc. v. Kanebridge Corp.*, 258 F.3d 148 (3d Cir. 2001); *R&B, Inc. v. Needa Parts Mfg., Inc.*, 50 Fed. Appx. 519, 521-22 (3d Cir. 2002).

without any labels or other paperwork bearing the Humble names.[13] [Ba40-42, 78-79]
Under these circumstances, Humble cannot establish that its product names can be
protected as trademarks.

But even if trademark rights exist, Humble cannot prevail on a claim of
trademark infringement without first bearing the burden of proving "that the
defendant's actual practice is likely to produce confusion in the minds of consumers
about the origin of the goods . . . in question." *KP Permanent*, 543 U.S. at 117. As
noted earlier, the mere fact that a website deliberately uses another party's trademark
is not sufficient to establish likelihood of confusion. *Playtex Prods., Inc. v. Georgia-
Pacific Corp.*, 390 F.3d at 166: ("Plaintiff makes much of the fact that the search
function of the website www.drugstore.com associates 'Moist-Ones' with 'Wet
Ones.' We agree with the district court, however, that 'the fact that the computer
associates "moist ones" with "Wet ones" reflects little, if anything, about whether
consumers are actually confused'").

The Third Circuit has devised a 10-part test (known as the *Lapp* factors) for
purposes of analyzing the likelihood of confusion:

1. The degree of similarity between the owner's mark and the alleged
   infringing mark.

---

[13]The goods shipped by Buying also do not bear the Humble names.

24

2.      The strength of the owner's mark.

3.      The price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase.

4.      The length of time the defendant has used the mark without evidence of actual confusion arising.

5.      The intent of the defendant in adopting the mark.

6.      The evidence of actual confusion.

7.      Whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media.

8.      The extent to which the targets of the parties' sales efforts are the same.

9.      The relationship of the goods in the minds of consumers because of the similarity of function.

10.     Other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470-71 (3d Cir. 2005); *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

Before analyzing these factors, it is important to note that the *Lapp* test is a qualitative inquiry.  Not all factors will be relevant in

25

all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting. A district court should utilize the factors that seem appropriate to a given situation.

*Freedom Card*, 432 F.3d at 471, *quoting A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000). Thus, the *Lapp* analysis is fact-sensitive and requires weighing and balancing the various factors under consideration. As such, in most cases it will be entirely inappropriate to grant summary judgment on this analysis. The "qualitative inquiry" is a function that should be performed and resolved by the jury after having an opportunity to consider all the evidence at a full trial on the merits.

The first *Lapp* factor is the degree of similarity between the owner's mark and the alleged infringing mark. Here, the two marks are the same because Buying refers to Humble's product names for purposes of comparative advertising. The second factor is the strength of the mark. Humble's mark is weak at best and perhaps even non-existent because, as noted earlier, Humble does not affix the mark to its products. Furthermore, while Humble touts its gross sales figures, it has not submitted any proofs as to the dollar amount of sales for each of its product names.[14] A mark is

---

[14]While Humble's sales figures are missing from the record, the Isley Declaration purportedly reflects Buying's sales figures for an unidentified one-year period — including, according to Humble, infringing sales. Although Buying disputes this, it is interesting to note the insignificant level of sales for each of the 90

considered weak if it generates only insignificant revenues each year.  *See R&B, Inc. v. Needa Parts Mfg., Inc.*, 50 Fed. Appx. at 526.  The same is true where, as here, "the prices of the goods are relatively low."  *See id*.  The low price also affects the third *Lapp* factor, as does the fact that internet shoppers tend to be relatively sophisticated and thus not easily confused.  *See interState Net Bank v. Netb@nk, Inc.*, 348 F. Supp. 2d at 355.

In this case, perhaps the most significant factors are the fourth and sixth, both of which relate to the evidence of actual consumer confusion.  As Humble admits, it "has not commissioned any customer surveys and has no customer testimony to submit."  [Hb23]  In other words, the record is devoid of any evidence of actual consumer confusion, despite three years of comparative advertising by Buying.  As the Third Circuit has observed:

> If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future.  The longer the challenged product has been in use, the stronger this inference will be.

product names claimed by Humble.  There were no sales at all for 43 of the names, while 19 names generated annual sales of less than $1,000, 21 names produced between $1,000 and $5,000, five names between $5,000 and $10,000, and only two over $10,000.  Thus, 92% of the names generated less than $5,000.  A revenue stream of $10,000 was found to be insignificant — and thus indicative of a weak mark — in *R&B, Inc. v. Needa Parts Mfg., Inc.*, 50 Fed. Appx. at 526.  Consequently, Humble's own proofs undermine its ability to establish the existence of a strong mark.

27

*Checkpoint Sys., Inc., v. Check Point Software Techs., Inc.*, 269 F.3d 270, 291 (3d Cir. 2001), *quoting Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir. 1995).  Certainly three years without instances of actual confusion is more than enough to preclude a finding of likelihood of confusion.  *interState Net Bank v. Netb@nk, Inc.*, 348 F. Supp. 2d at 354-55.

The fifth *Lapp* factor relates to the intent of the party accused of infringement. In this Circuit, it is well-settled that mere proof of intent to copy the mark, without more, is not probative of success in causing confusion; there must be additional evidence to establish an intent to confuse consumers.  *Id*. at 355-56.  *See Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 375 (D.N.J. 2002) ("intentional copying is irrelevant when other factors indicate that there is not a likelihood of confusion, or when the facts do not show that the defendant intended to deceive consumers as to the product's source") (citations omitted).  In the present case, Buying admits that it intended to use Humble's product names — but only for purposes of comparative advertising, and not for the purpose of confusing consumers. As noted earlier, Buying actually diminished consumer confusion by exposing Humble's scheme of re-naming the products shown in Leggett & Platt's photographs. Also as noted earlier, Buying's reliance on the advice of Fox Rothschild negates any intent to confuse consumers.

28

The seventh, eighth and ninth *Lapp* factors are relatively self-evident — the goods are marketed and advertised via the same channels, the targets of the parties' sales efforts are the same, and the goods are identical in function. However, because these factors must be viewed in the context of comparative advertising, their significance is minimal and they will not support an inference of likely confusion. The tenth *Lapp* factor seems completely irrelevant to this case.

When the foregoing factors are weighed and balanced, the balance tips decidedly in favor of Buying. Accordingly, Humble has not carried its burden of establishing the essential element of likelihood of confusion. Therefore, Humble's motion for summary judgment must be denied.

**D.    The Complaint Is Neither Meritless Nor Actionable.**

On pages 37-38 of its Brief, Humble asserts that the filing of a baseless litigation constitutes unfair competition under both the Lanham Act and New Jersey law. Humble cites no authority for the proposition that New Jersey recognizes such a claim. This is not surprising, because it is well-settled under New Jersey law that the "sole theory of redress" for the wrongful institution of judicial proceedings is the tort of malicious prosecution. *Ackerman v. Lagano*, 172 N.J. Super. 468, 471 (L. Div. 1979). Consequently, Humble is not entitled to circumvent the strict requirements of a malicious prosecution claim by using a different label for its claim — such as unfair

29

competition.[15]

As a result, it is not enough for Humble to assert that the Complaint lacked merit. The mere fact that a lawsuit was lost or dismissed does not mean that it lacked merit for purposes of a malicious prosecution claim under New Jersey law. *See Westhoff v. Kerr S.S. Co.*, 219 N.J. Super. 316, 322 (App. Div.) ("a termination of civil proceedings adverse to the party initiating them is not evidence that they were brought without probable cause"), *certification denied*, 109 N.J. 503 (1987).

More importantly, it is well-settled that a claim for malicious prosecution cannot be asserted as a counterclaim, because one of the essential elements of the tort is a favorable outcome in a prior litigation. *Penwag Prop. Co. v. Landau*, 76 N.J. 595, 598 (1978). *See Hill v. Algor*, 85 F. Supp. 2d 391, 412-13 (D.N.J. 2000) (cause of action for malicious prosecution does not accrue until prior litigation has terminated in favor of current claimant). Accordingly, to the extent that Humble's Counterclaim is based on a state-law theory of baseless litigation by Buying, the

---

[15] *See Ruberton v. Gamage*, 280 N.J. Super. 125, 133 (App. Div.), *certification denied*, 142 N.J. 451 (1995); *Salek v. Passaic Collegiate School*, 255 N.J. Super. 355, 361 (App. Div. 1992); *Mayflower Indus. v. Thor Corp.*, 15 N.J. Super. 139, 151 (Ch. Div. 1951) (interference claim subsumed by malicious prosecution claim), *aff'd*, 9 N.J. 605 (1952).

Counterclaim must be dismissed.[16]

As for federal law, sham litigation claims arise under antitrust law and not the Lanham Act.  *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 638 n.6 (1977) (sham litigation "could be part of an anticompetitive scheme" and thus "may constitute an antitrust violation"); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) ("although sham litigation as a tactic to destroy competition can lead to antitrust violation, sham litigation requires more than a failed legal theory"); *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998) ("enforcement of patent, trade dress and trademarks" is immune "from antitrust liability unless such enforcement is a sham").  Humble dismissed its antitrust claim by Stipulation of Dismissal filed on June 10, 2004.

Furthermore, there can be no liability on a sham litigation claim where, as here, there was an objective basis for the filing of the trademark infringement claim. *Professional Real Est. Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993).  As noted earlier, Humble itself concedes that the law was and is unsettled on the question of whether trademarks can be infringed by use in internet search engines. Consequently, Buying cannot be held liable for relying on a novel legal theory.

_____

[16]Humble has also failed to plead and prove a "special grievance," which is another essential element of malicious prosecution.  *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 370-71 (D.N.J. 2000).

31

*McKnight v. General Motors Corp.*, 511 U.S. 659 (1994); *Securacomm Consulting, Inc. v. Securacomm Inc.*, 224 F.3d 273, 280 (3d Cir. 2000).

As for the crucial fact on which Buying based its Complaint — the "screen shot" showing that a search for the term "total bedroom" caused Humble's sponsored link to appear — Humble does not question its authenticity, but instead asserts that it did not purchase this search term. This defense does not vitiate Buying's objective basis for believing that it had probable cause to file suit. At the time the Complaint was filed, only the infringing "screen shot" was available to Buying; there was no way of knowing what arrangements existed between Humble and Google.

Thus, Humble is reduced to arguing that the Complaint was frivolous because Buying lacks trademark rights in TOTAL BEDROOM. But this is a mixed question of law and fact. As shown earlier, Humble is simply wrong in its legal theory on this issue. No matter how strongly Humble may believe in the validity of its theory, the bottom line is that Buying had — and still has — a plausible claim to trademark protection.

Therefore, Humble has not carried its burden of establishing the complete absence of any factual or legal basis for the Lanham Act claim asserted in the Complaint. Buying's reliance on the advice of the Fox Rothschild firm also defeats this claim. *See American Int'l Airways, Inc. v. American Int'l Group, Inc.*, 816 F.

32

Supp. 1058, 1064 (E.D. Pa. 1993).

Finally, Humble's theory as to Buying's motive for filing the Complaint is implausible. If Buying believed that its own trademark claim was bogus and that its comparative advertising was flagrantly violating marks belonging to Humble, it would have made no sense for Buying to file a claim that had no chance of success. In addition to the obvious economic self-interest in avoiding a wasteful expenditure of substantial legal fees with no hope of a return on this investment, a conscious wrongdoer rarely wants to heighten the profile of his infringement activities and to expose himself to sanctions for a frivolous lawsuit. This calculation is even more compelling when the wrongdoer knows that filing a frivolous claim will guarantee the filing of a counterclaim that otherwise might never have been filed. Therefore, the record will not support the inference that Humble asks the Court to draw with respect to Buying's motive. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (if the factual context renders the claim implausible, such that it makes no sense, the party seeking summary judgment must come forward with more persuasive evidence than what would otherwise be necessary).

Accordingly, Humble's motion for summary judgment on its sham litigation claim must be denied.

33

## IV.   HUMBLE'S REMAINING DEMANDS FOR ATTORNEYS' FEES SHOULD BE STRICKEN.

Recently, the Court granted Buying's motion to strike Humble's demands for attorneys' fees under state law.  The motion was denied without prejudice insofar as Humble's demands were based on the Lanham Act.  In its oral decision of February 8, 2006, the Court indicated that Buying could renew its motion after the summary judgment motion proposed by Humble.  Now that Humble has had a full and fair opportunity to present the merits of its position to the Court, Buying once again asks the Court to strike Humble's fee demands.

Fee awards under 15 U.S.C. § 1117(a) are available only in "exceptional cases."  As shown in the briefs filed by Buying on its earlier motion, the Third Circuit requires a party who defeats a Lanham Act claim to establish that the filing of the claim was frivolous.  For the reasons set forth in Point III(D) of this Brief, the filing of the Complaint cannot be deemed unjustified.  Therefore, even if the Court ultimately dismisses Buying's trademark infringement claim, Humble will not be entitled to a fee award for defending against Buying's claim.[17]

_____

[17]Buying's reliance on the advice of counsel also defeats Humble's demand for fees.  *See TakeCare Corp. v. TakeCare of Okla., Inc.*, 889 F.2d 955, 957 (10th Cir. 1989); *Stillman v. Edmund Scientific Co.*, 522 F.2d 798, 800-01 & nn.2, 4 (4th Cir. 1975); *CFM Majestic, Inc. v. NHC, Inc.*, 93 F. Supp. 2d 942, 961-62 (N.D. Ind. 2000).  Thus, even if Humble could somehow establish that Buying's Lanham Act claim was frivolous at the time it was filed, Humble still cannot obtain a fee award

This means that the only possible basis for a fee award is Humble's own Lanham Act claim. Humble itself characterizes this claim as "merely garden variety trademark infringement and unfair competition, 21st-century-style." [Hb1] By definition, a "garden variety" case cannot qualify as an "exceptional case" under section 1117(a). *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 879 (8th Cir. 1994).

Even if Humble Abode ultimately prevails on its claim that Buying's comparative advertising made unfair use of Humble's trademarks, the fact-sensitive result would represent nothing more than successful quibbling about the details of trademark protection in the novel and evolving context of internet advertising, as opposed to a deliberate and flagrant disregard of settled trademark law on the part of Humble. Because the law of internet advertising is unsettled and still developing, Buying cannot be found "culpable" by reason of its failure to anticipate the outcome of the novel legal issues in this case. *See McKnight v. General Motors Corp.*, 511 U.S. 659 (1994); *Securacomm*, 224 F.3d at 280. Under these circumstances, there is no basis for the required "finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as

---

without showing that it was patently unreasonable for the untrained lay management of Buying to rely upon the high-powered legal expertise of the Fox Rothschild firm as to whether the Lanham Act claim had merit.

'exceptional.'" *Securacomm*, 224 F.3d at 280, *quoting Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991).

The same conclusion is dictated by Buying's reliance on the Fox Rothschild firm for the approval of its website and the drafting of appropriate trademark disclaimers. *See* note 17 *supra*. Such reliance negates the "culpable conduct" required by the Third Circuit  as an essential prerequisite to a fee award under the Lanham Act.  Therefore, Humble's demand for a fee award under 15 U.S.C. § 1117(a) should be stricken from the Counterclaim.

36

## CONCLUSION

For the foregoing reasons, plaintiff Buying for the Home, Inc. respectfully requests that this Court deny defendant Humble Abode, LLC's motion for summary judgment and strike all demands for attorneys' fees and disbursements asserted by Humble.

Respectfully submitted,

COLLIER & BASIL, P.C.
Attorneys for Plaintiff


By   /s/  *Richard F. Collier, Jr.*
    RICHARD F. COLLIER, JR.
    A Director of the Firm

Dated: March 13, 2006

37